**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **E2 REAL ESTATE PARTNERS** | § | **CASE NO. 10-35718-H5-11** |
| **III, LLC,** | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |

**DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF
FANNIE MAE'S CHAPTER 11 PLAN OF REORGANIZATION**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY FANNIE MAE, AS PLAN PROPONENT. THIS DISCLOSURE STATEMENT DESCRIBES THE TERMS AND PROVISIONS OF FANNIE MAE'S CHAPTER 11 PLAN OF REORGANIZATION (THE "PLAN"). ANY TERM USED IN THIS DISCLOSURE STATEMENT THAT IS NOT DEFINED HEREIN HAS THE MEANING ASCRIBED TO THAT TERM IN THE PLAN OR AS SUCH TERM MAY BE DEFINED IN THE UNITED STATES BANKRUPTCY CODE. A COPY OF THE PLAN IS INCLUDED WITH THIS DISCLOSURE STATEMENT.**

**DATED: April 4, 2011**

Submitted By:

Phillip L. Lamberson
State Bar No. 00794134
Sean B. Davis[1]
State Bar No. 24069583
S.D. Tex. No. 1048341
**WINSTEAD PC**
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390

**ATTORNEYS FOR FANNIE MAE**

---

[1] Resident at Winstead's Houston office.

### DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF FANNIE MAE'S CHAPTER 11 PLAN OF REORGANIZATION

Fannie Mae submits this Disclosure Statement in support of Fannie Mae's Chapter 11 Plan of Reorganization (the "Plan") filed on April 4, 2011, pursuant to the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*, the "Bankruptcy Code").

### SUMMARY OF FANNIE MAE'S PLAN[2]

E2 Real Estate Partners III, LLC (the "Debtor") is a limited liability company that owns and operates an apartment complex located in Baytown, Texas, more commonly referred to as the Logan's Pointe Apartments. The apartment complex is subject to a senior lien and security interest held by Fannie Mae to secure allowed claims aggregating no less than $8,984,676.60, as set forth in detail in the proof of claim filed in this case by Fannie Mae. According to a recent appraisal prepared for Fannie Mae, the as-is value of the apartment complex is $4,010,000.00, and the as-stabilized value is $4,570,000.00. Based upon this appraisal, Fannie Mae's current unsecured deficiency claim against the Debtor is between approximately $4.4 million and $4.9 million. By way of comparison, the Debtor estimates the claims of all other non-insider creditors of the Debtor at $251,791.05.

Under Fannie Mae's Plan, Fannie Mae will pay all administrative and priority claims and proposes to pay unsecured creditors on a pro rata basis from any recovery obtained by the Debtor from its litigation against Lexington Insurance. Additionally, Fannie Mae will subordinate its unsecured deficiency claim to other unsecured creditors to the extent that the Debtor's recovery from the litigation is insufficient to pay all unsecured creditors in full. Fannie Mae's Plan also provides for the liquidation of the Debtor's other assets, including permitting Fannie Mae to enforce its rights and remedies against its collateral as permitted under applicable state law and the pre-petition loan documents.

The following table presents a summary of claims and proposed treatment under the Plan based on the Debtor's estimates of claims in its Disclosure Statement and Fannie Mae's analysis of the Debtor's Schedules and filed proofs of claim in the Chapter 11 Case. This summary is provided only for illustrative purposes and convenience of reference. The Debtor estimates that the aggregate amount of unclassified Administrative Claims approximates $65,000.00, which will be fully satisfied by Fannie Mae's Contribution. The express and specific terms of the Plan hereinafter set forth in detail shall govern and control any inconsistency or conflict between this descriptive summary and the actual terms of the Plan.

---

[2] Unless otherwise indicated, the information provided in this Disclosure Statement is based on the Debtor's representations and the Claims Register in this Chapter 11 Case.

| Class Description | Est. Claimants Within Class | Estimated Aggregate Amount of Allowable Claims | Proposed Treatment |
|---|---|---|---|
| **Class 1 Priority Claims** | **1** | **None** | **Allowed Priority Claims Paid in Within 30 days After Effective Date or Allowance of Claim, Whichever is Later. Any Fee Claims of Debtor's Counsel will be Paid First from Any Retainer – Unimpaired** |
| **Class 2 Secured Tax Claims** | **1** | **$45,865.61** | **Allowed Secured Tax Claimants shall retain all Liens securing their Claims until such Claim is fully paid or until such holder otherwise agrees – Unimpaired** |
| **Class 3 Secured Claim of Fannie Mae** | **1** | **At least $4,010,000.00** | **Automatic Stay is Terminated as to Fannie Mae on Effective Date and Fannie Mae is Permitted to Enforce Rights Under Loan Documents and Applicable Law Against Any Collateral.  To Extent Class 3 is Not Satisfied from Proceeds of Collateral, Fannie Mae is Entitled to Class 4 Unsecured Claim for the deficiency – Impaired** |
| **Class 4 General Unsecured Claims** | **21** | **At least $4,666,467.65[3]** | **Allowed General Unsecured Claims shall receive their pro rata portion of the net recovery, if any, after payment of attorneys' fees, costs, and expenses, from the Debtor's insurance litigation in the matter styled *E2 Real Estate Partners III, LLC vs. Lexington Insurance Company, et al.*, Cause No. 2009-36048, currently pending before the 55th Judicial District Court of Harris County, Texas.  Fannie Mae shall subordinate its unsecured claim in Class 4 to the payment of other unsecured claims in Class 4  - Impaired** |
| **Class 5 Interests in the Debtor** | **16** | **Unknown** | **All Equity Interest in the Debtor cancelled on the Effective Date and shall receive nothing on account of their interests - Impaired** |

# I.
# INTRODUCTION

## A.      Filing of the Debtor's Chapter 11 Case

The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on July 5, 2010 (the "Petition Date"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").  Since the Petition Date, the Debtor has continued to manage its financial affairs and assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3] This amount is based partially on the estimate provided by the Debtor in its Disclosure Statement.

**B.      Purpose of Disclosure Statement**

This Disclosure Statement is submitted in accordance with section 1125 of the Bankruptcy Code for the purpose of soliciting acceptances of the Plan from holders of certain Classes of Claims.  The only Creditors whose acceptances of the Plan are sought are creditors whose Claims are "impaired" by the Plan, as that term is defined in section 1124 of the Bankruptcy Code, and who are receiving distributions under the Plan.  Holders of Claims or Interests that are not "impaired" are deemed to have accepted the Plan.

Fannie Mae has prepared this Disclosure Statement pursuant to the provisions of section 1125 of the Bankruptcy Code, which requires that a copy of the Plan, or a summary thereof, be submitted to all holders of Claims against, and Interests in, the Debtor, along with a written Disclosure Statement containing adequate information about the Plan of a kind, and in sufficient detail, as far as is reasonably practicable, that would enable a hypothetical, reasonable investor typical of Creditors and holders of Interests to make an informed judgment in exercising their right to vote on the Plan.

Section 1125 of the Bankruptcy Code provides, in pertinent part:

(b)      An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.  The court may approve a disclosure statement without a valuation of the Debtor or an appraisal of the Debtor's assets.

* * *

(d)      Whether a disclosure statement required under subsection (b) of this section contains adequate information is not governed by any otherwise applicable non-bankruptcy law, rule, or regulation, but an agency or official whose duty is to administer or enforce such a law, rule, or regulation may be heard on the issue of whether a disclosure statement contains adequate information.  Such an agency or official may not appeal from, or otherwise seek review of, an order approving a disclosure statement.

(e)      A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the Debtor, of an affiliate participating in a joint plan with the Debtor, or of a newly organized

successor to the Debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

**This Disclosure Statement was approved by the Bankruptcy Court during a hearing on _____ ____, 2011**.  Such approval is required by the Bankruptcy Code and does not constitute a judgment or determination by the Bankruptcy Court as to the desirability of the Plan, or as to the value or suitability of any consideration or treatment proposed or offered under the Plan.  Such approval does indicate, however, that the Bankruptcy Court has determined that the Disclosure Statement meets the requirements of Section 1125 of the Bankruptcy Code and contains adequate information to permit the holders of Allowed Claims, whose acceptance of the Plan is solicited, to make an informed judgment regarding acceptance or rejection of the Plan.

**The Approval by the Bankruptcy Court of this Disclosure Statement Does Not Constitute an Endorsement by the Bankruptcy Court of the Plan or a Guarantee of the Accuracy or Completeness of the Information Contained Herein.  The Material Herein Contained is Intended Solely for the Use of Creditors of and holders of Interests in the Debtor in Evaluating the Plan and Voting to Accept or Reject the Plan and, Accordingly, May Not be Relied Upon For Any Purpose Other Than the Determination of How to Vote on the Plan.  The Plan is Subject to Numerous Conditions and Variables and There Can Be no Absolute Assurance that the Plan, as Contemplated, will be Effectuated as to Any Debtor.  Fannie Mae Believes that the Plan and the Treatment of Claims Under The Plan are in the Best Interests of Creditors, and Urge That You Vote to Accept the Plan.**

**This Disclosure Statement has not Been Approved or Disapproved By The United States Securities & Exchange Commission, nor Has The United States Securities & Exchange Commission Passed Upon the Accuracy or Adequacy of the Statements Contained Herein.  Any Representation to the Contrary is Unlawful.**

**This Disclosure Statement and any Exhibits or Appendices May Contain Forward-Looking Statements Relating to Business Expectations, Asset Sales Projections, and Liquidation Analysis.  Business Plans May Change as Circumstances Warrant.  Actual Results May Differ Materially as a Result of Many Factors, Over Many of Which Fannie Mae Has no Control.**

## C.    Hearing on Confirmation of the Plan

The Bankruptcy Court has set _____ _____, 2011, at ___:____ ___.m. Central Time, as the time and date for the hearing (the "Confirmation Hearing") to determine whether the Plan has been accepted by the requisite number of Creditors and whether the other requirements for Confirmation of the Plan have been satisfied.  The hearing will be held in Courtroom 403,

United States Courthouse, 515 Rusk Ave., 4th Floor, Houston, Texas 77002. Once commenced, the Confirmation Hearing may be adjourned or continued by announcement in open court with no further notice.

Holders of Claims against the Debtor may vote on the Plan by completing and delivering the enclosed Ballot to: Aida Wondwessen, Winstead PC, 1201 Elm Street, Suite 5400, Dallas, Texas 75270. **Ballots must be actually received on or before 5:00 p.m. Central Time on _____ _____, 2011, in order to be effective and included within the "voting tally" for purposes of determining whether a Class of creditors has accepted or rejected the Plan**.

If the Plan is rejected by one or more impaired Classes of creditors or holders of Interests, the Plan, or a modification thereof, may still be confirmed by the Bankruptcy Court under section 1129(b) of the Bankruptcy Code (commonly referred to as a "cramdown") if the Bankruptcy Court determines, among other things, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Class or Classes of creditors or holders of Interests impaired by the Plan. The procedures and requirements for voting on the Plan are described in more detail below.

### D.    Sources of Information

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, its business, property, and management have been prepared solely from information furnished by the Debtor.

> **The Information Contained Herein Has Not Been Subjected To a Certified Audit and is Based, in Large Part, Upon Information Prepared by Parties Other Than Fannie Mae. Therefore, Plan Proponent is Unable to Warrant or Represent that the Information Contained Herein is Completely Accurate**.

While Fannie Mae has tried to retain the meaning of such other documents or portions that have been summarized, Fannie Mae urges that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of such document shall govern.

The authors of the Disclosure Statement have compiled information without professional comment, opinion or verification and do not suggest comprehensive treatment has been given to matters identified herein. Each Creditor and holder of an Interest is urged to independently investigate any such matters prior to reliance thereon.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified, and neither the delivery of this Disclosure Statement nor any exchange of rights made in connection with it shall, under any circumstances, create an implication that there has been no change in the facts set forth herein since the date hereof.

No statements concerning the Debtor, the value of its property, or the value of any benefit offered to any holder of a Claim or Interest in connection with the Plan should be relied upon other than as set forth in this Disclosure Statement.  In arriving at your decision, you should not rely on any representation or inducement made to secure your acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be reported to counsel for the Debtor, Phillip L. Lamberson, Winstead PC, 1201 Elm Street, Suite 5400, Dallas, Texas 75270; Telephone: (214) 745-5180; Email: plamberson@winstead.com.

## II.
## EXPLANATION OF CHAPTER 11

### A.     Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to Chapter 11, a debtor-in-possession attempts to reorganize its business and financial affairs for the benefit of the Debtor, its creditors, and other parties-in-interest.

The commencement of a Chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the petition is filed.  Unless the Bankruptcy Court orders the appointment of a trustee, Sections 1101, 1107 and 1108 of the Bankruptcy Code provide that a Chapter 11 debtor may continue to operate its business and control the assets of its estate as a "debtor-in-possession," which is how the Debtor has operated since the Petition Date.

The filing of a Chapter 11 petition also triggers the automatic stay, which is provided by section 362 of the Bankruptcy Code.  The automatic stay essentially halts all attempts to collect pre-petition claims from the debtor or to otherwise interfere with the debtor's business or its estate.

Formulation of a chapter 11 plan is the principal purpose of a Chapter 11 case.  The plan sets forth the means for satisfying the claims of creditors against and interests of equity security holders in the debtor.  Unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a Chapter 11 case (the "Exclusive Period").  After the Exclusive Period has expired, a creditor or any other party-in-interest may file a plan, unless the Debtor files a plan within the Exclusive Period.  If a Debtor does file a plan within the Exclusive Period, the Debtor is given sixty (60) additional days (the "Solicitation Period") to solicit acceptances of its plan. Section 1121(d) of the Bankruptcy Code permits the Bankruptcy Court to extend or reduce the Exclusive Period and the Solicitation Period upon a showing of adequate "cause."  **Because the Debtor filed this Chapter 11 Case more than 240 days ago and filed its Plan of Reorganization more than sixty (60) days ago and the Court has not further extended the Exclusive Period or the Solicitation Period since the Debtor filed its Plan of Reorganization, the Debtor's Exclusive Period and Solicitation Period have expired.**

B.      **Chapter 11 Plans**

A chapter 11 plan provides the manner in which a debtor or estate will satisfy the claims of its creditors.  After the plan has been filed, certain holders of claims against or interests in a debtor are permitted to vote on whether to accept or reject the plan.  Chapter 11 does not require that each holder of a claim against or interest in a debtor vote in favor of a plan in order for the plan to be confirmed.  At a minimum, however, a plan must be accepted by a majority in number and two-thirds (2/3) in amount of those claims actually voting from at least one class of claims impaired under the plan.  The Bankruptcy Code also defines acceptance of a chapter 11 plan by a class of interests (equity securities) as acceptance by holders of two-thirds (2/3) of the number of equity interests actually voted.

Classes of claims or interests that are not "impaired" under a Chapter 11 plan are conclusively presumed to have accepted the plan and, thus, are not entitled to vote.  Acceptances of the Plan in this case are being solicited only from those persons who hold Claims in an impaired Class.  A Class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims or Interests of that Class are modified.  Modification does not include curing defaults and reinstating maturity or payment in full in cash.

Even if all classes of claims and interests accept a Chapter 11 plan, the Bankruptcy Court may nonetheless still deny confirmation.  Section 1129(a) of the Bankruptcy Code sets forth the requirements for confirmation.

The Bankruptcy Court may also confirm a Chapter 11 plan even though fewer than all of the classes of impaired claims and interests accept it.  In order for a plan to be confirmed despite the rejection of a class of impaired claims or interests, the proponent of the plan must show, among other things, that the plan does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan. Section 1129(b) of the Bankruptcy Code sets forth the requirements for confirmation where fewer than all impaired classes accept it.

**III.**
**VOTING PROCEDURES AND REQUIREMENTS FOR CONFIRMATION**

If you are in one of the Classes of Claims whose rights are affected by the Plan (*see* "Summary of the Plan" below), it is important that you vote.  **If you fail to vote, your rights may be jeopardized.**

A.      **"Voting Claims" – Parties Entitled to Vote**

Pursuant to the provisions of Section 1126 of the Bankruptcy Code, holders of Claims or Interests that are: (i) allowed; (ii) impaired; and, (iii) that are receiving or retaining property on account of such Claims or Interests pursuant to the Plan, are entitled to vote either for or against the Plan ("Voting Claims").  Accordingly, in this case, any holder of a Claim classified in Classes 2 or 3  of the Plan may have a Voting Claim and should have received a ballot for voting (with

return envelope) in the Disclosure Statement and Plan materials (hereinafter, the "Solicitation Package") since these are the Classes consisting of impaired Claims that are receiving property. Holders of Claims in Class 1 are not impaired and are not entitled to vote because they are presumed to have accepted the Plan.  Holders of Claims in Class 4 are impaired but are not entitled to vote because they are presumed to have rejected the Plan.

Any creditor whose Claim was not scheduled, or was listed as disputed, contingent or unliquidated, must have timely filed a proof of Claim in order to have an "allowed" Claim.  **As of the date of this Disclosure Statement, and pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3) and Local Rule 3003-1(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of Texas, the "claims bar date" for timely filing proofs of claim was November 15, 2010, with the exception of governmental units, the claims bar date for which was January 3, 2011**.  In the event that any proof of Claim is subject to an objection by a party-in-interest as of or during the Plan voting period ("Objected-to Claim"), then, by definition, it is not "allowed," for purposes of Section 1126 of the Bankruptcy Code, and is not to be considered a Voting Claim entitled to cast a ballot.  Nevertheless, pursuant to Bankruptcy Rule 3018(a), the holder of an Objected-to Claim may file a motion with the Bankruptcy Court, after notice and hearing, to allow the Claim temporarily for voting purposes in an amount that the Bankruptcy Court deems proper.  Allowance of a Claim for voting purposes, and disallowance for voting purposes, does not necessarily mean that all or a portion of the Claim will be allowed or disallowed for distribution or other purposes.

**By Enclosing a Ballot With This Disclosure Statement, Fannie Mae Is Not Representing That You Possess or Hold An Allowable Claim Or Are Entitled To Vote On The Plan.**

**B.    Return of Ballots**

If you are a holder of a Voting Claim, your vote on the Plan is important.  Completed ballots should either be returned in the enclosed envelope or otherwise mailed to counsel for Fannie Mae at the following address:

Aida Wondwessen
Winstead PC
1201 Elm Street, Suite 5400
Dallas, Texas 75270

1.      **Deadline for Submission of Ballots**

**Ballots must be actually received by Fannie Mae's counsel by mail or hand-delivery (and not by electronic mail or facsimile, unless agreed in writing by Fannie Mae), by _____ ____, 2011 at 5:00 P.M., Central Time (the "Ballot Return Date").  Any Ballots received after the Ballot Return Date will not be counted.  Any Ballot which is not executed by a person authorized to sign such Ballot will not be counted.  If you have any questions regarding the procedures for voting on the Plan, contact Counsel for Fannie Mae, Phillip L. Lamberson, Esq., Winstead PC, 1201 Elm Street, Suite 5400, Dallas, TX  75270, Phone (214) 745-5180, Fax (214) 745-5390, Email: plamberson@winstead.com.**

**FANNIE MAE URGES ALL HOLDERS OF VOTING CLAIMS TO VOTE IN FAVOR OF THE PLAN.**

C.      **Confirmation of Plan**

1.      **Solicitation of Acceptances**

Fannie Mae is soliciting your vote.  The cost of any solicitation by Fannie Mae will be borne by Fannie Mae.  No other additional compensation shall be received by any party for any solicitation other than as disclosed to and approved by the Bankruptcy Court.

**No Representations or Assurances, if Any, Concerning any Debtor (Including, Without Limitation, its Future Business Operations or Projections of Anticipated Property Sale Prices or Net Sale Proceeds) or the Plan are Authorized by Fannie Mae Other Than as set Forth in this Disclosure Statement.  Any Representations or Inducements Made by Any Person to Secure Your Vote that are Other than Those Herein Contained Should Not Be Relied Upon By You In Arriving at Your Decision, and Such Additional Representations or Inducements Should Be Reported to Counsel for Fannie Mae so That They May Take Such Action as May be Deemed Appropriate on Account Thereof.**

**This is a Solicitation Solely by the Plan Proponent and is Not a Solicitation by any Officer, Director, Shareholder, Partner, Member, Attorney, or Accountant for Fannie Mae.  The Representations, if any, Made Herein are Those of the Plan Proponent and Not of Such Officers, Directors, Shareholders, Partners, Members, Attorneys, or Accountants, Except as May Be Otherwise Specifically and Expressly Indicated.**

Under the Bankruptcy Code, a vote for acceptance or rejection of a plan may not be solicited unless the claimant has received a copy of a disclosure statement approved by the Bankruptcy Court prior to, or concurrently with, such solicitation.  This solicitation of votes on the Plan is governed by section 1125(b) of the Bankruptcy Code.  Violation of section 1125(b) of

the Bankruptcy Code may result in sanctions by the Bankruptcy Court, including disallowance of any improperly solicited vote.

## 2. Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an Order confirming the Plan.  For the Plan to be confirmed, Section 1129 requires that:

(i)     The Plan complies with the applicable provisions of the Bankruptcy Code;

(ii)     The debtor or trustee has complied with the applicable provisions of the Bankruptcy Code;

(iii)     The Plan has been proposed in good faith and not by any means forbidden by law;

(iv)     Any payment or distribution made or promised by any debtor or by a person issuing securities or acquiring property under the Plan for services or for costs and expense in connection with the Plan has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(v)     The debtor or plan proponent has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and holders of interests and with public policy; and the  has disclosed the identity of any insider that will be employed or retained by the reorganized debtor and the nature of any compensation for such insider;

(vi)     Any government regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the debtor have approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

(vii)     With respect to each impaired Class of Claims or Interests, either each holder of a Claim or Interest of the Class has accepted the Plan or will receive or retain under the Plan on account of that Claim or Interest

property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the Claims of a Class, each holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that holder's interest in the debtor's interest in the property that secures that Claim;

(viii)   Each Class of Claims or Interests has either accepted the Plan or is not impaired under the Plan;

(ix)   Except to the extent that the holder of a particular Administrative Claim or Priority Claim has agreed to a different treatment of its Claim, the Plan provides that Administrative Claims and Priority Claims shall be paid in full on the Effective Date or the date on which it is Allowed;

(x)   If a Class of Claims or Interests is impaired under the Plan, at least one Class of Claims or Interests that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim or Interest of that Class; and

(xi)   Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

Fannie Mae believes that the Plan satisfies all of the statutory requirements of the Bankruptcy Code and that the Plan was proposed in good faith. Fannie Mae believes that it has complied or will have complied with all the requirements of the Bankruptcy Code.

**3.   Acceptances Necessary to Confirm the Plan**

Chapter 11 of the Bankruptcy Code does not require that each holder of a Claim or Interest vote in favor of the Plan in order for the Court to confirm the Plan. Generally, to be confirmed under the acceptance provisions of Section 1126(a) of the Bankruptcy Code, the Plan must be accepted by each Class of Claims that is impaired under the Plan by Class members holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class actually voting in connection with the Plan; in connection with a Class of Interests, more than two-thirds (2/3) of the shares actually voted must accept to bind that Class. A Class of Interests that is impaired under the Plan accepts the Plan if more than two-thirds (2/3) in amount actually voting vote to accept the Plan. Even if all Classes of Claims and Interests accept the Plan, the Bankruptcy Court may refuse to confirm the Plan.

4.      **Cramdown**

In the event that any impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Plan Proponent if, as to each impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."   Section 1129(b) of the Bankruptcy Code sets forth the requirements for confirmation where fewer than all classes of impaired Claims accept it.

In the event one or more Classes of Impaired Claims rejects or is deemed to have rejected the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims.  Fannie Mae believes that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims that is Impaired.  Fannie Mae will ask the Court to confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code if fewer than all classes of Impaired Claim accept the Plan.

## IV.
## BACKGROUND OF THE DEBTOR[4]

A.      **Nature of the Debtor' Businesses and Properties**

E2 Real Estate Partners III, LLC was formed in 2008 with the purpose of purchasing Logan's Pointe Apartments located at 3700 Garth Road, Baytown, TX 77521 (the "Real Property"). The original plan was to remodel and upgrade the Real Property, manage for a seven to ten year period and sell the Real Property.  The Real Property was purchased in August 2008 for $8,350,000 with a total cost of $9,807,354.  A loan of $7,475,300 was provided by Arbor Financial Services, and $1,999,939.27 was provided by the equity partners and credits at closing. Additional equity of $502,400 was contributed for planned rehabilitation post-purchase.

The Debtor was unable to generate sufficient revenues or income to pay its operating expenses and the mortgage indebtedness to Fannie Mae.  Thereafter, in order to exercise its rights and remedies provided under the Loan Documents, Fannie Mae posted the Real Property for a July 6, 2010 foreclosure sale, which was stayed when the Debtor filed this Chapter 11 Case on July 5, 2010.

B.      **The Debtor's Chapter 11 Case.**

During the course of the Chapter 11 Case, Fannie Mae filed a motion seeking relief from the automatic stay to enable it to go forward with its foreclosure actions against the Real Property, in addition to the personal property contained therein and all rights related thereto, which constitute Fannie Mae's Collateral.  The hearing on the motion began November 29, 2010.  The

---

[4]  The information provided herein consists of the representations of the Debtor.  Fannie Mae makes no representations as to the accuracy of the information in this section.

**DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125 IN SUPPORT OF FANNIE MAE'S CHAPTER 11 PLAN OF REORGANIZATION**
**PAGE 13 OF 35**

Court continued the hearing on the motion until the hearing on confirmation of the Debtor's Plan, which had not yet been filed.

In December 2010, the parties entered into an agreed stipulation pursuant to which the Debtor was allowed to use up to $50,000 of Fannie Mae's cash Collateral, over and above the amounts the Debtor was authorized to use on a monthly basis for operations, to make rehabilitative repairs to several units at the Real Property.  These funds were advanced from the Debtor's corporate debtor-in-possession bank deposit account, into which the Debtor had deposited approximately $350,000 in net recovery from a partial settlement of the insurance litigation related to the hurricane damage, which funds were also Fannie Mae's cash Collateral.

On January 16, 2011, the Debtor filed its Plan and Disclosure Statement seeking to cram down Fannie Mae's indebtedness.  Fannie Mae filed an objection to the Debtor's Disclosure Statement, and at the March 1, 2011 hearing on the Debtor's Disclosure Statement, the Debtor withdrew the same and requested the parties attend mediation.  On March 11, 2011, the parties attended mediation to determine the terms of an agreed plan, as well as any further use of Fannie Mae's cash Collateral to fund remodeling of and cosmetic upgrades to the Real Property.  The parties, however, were unable to come to an agreement on these issues.  The Debtor has not yet filed an amended disclosure statement or plan.

## C.    Litigation

As of the Petition Date, the Debtor was plaintiff in the matter styled *E2 Real Estate Partners III, LLC vs. Lexington Insurance Company, et al.*, Cause No. 2009-36048, in the 55th Judicial District Court of Harris County, Texas (the "<u>Lexington Claim</u>").  The suit was initiated against the Debtor's property insurance carriers based on the Debtor's belief that the carriers had failed to satisfactorily and properly settle the claim related to damage to the Real Property caused by Hurricane Ike in 2008.  The suit was split into two parts: actual damages related to physical damages to the Real Property and damages for the insurance carriers' alleged bad faith and delays in settling the claim.  In October 2010, the Debtor reached a partial settlement of the suit related to the actual damages in the amount of $1,097,871.20, from which the Estate retained approximately $350,000 after paying legal fees, costs, and expenses.  The Debtor maintains bad faith claims against Lexington Insurance. The trial had been set for January, 2011, but has been postponed.  A new trial date has not yet been set by the Court.  The Debtor estimates the gross value of any recovery to be in the $1,500,000 range, less forty-percent legal contingency fees and additional legal expenses.

Except claims that are expressly released under the Plan, all litigation claims of the Debtor are to be maintained and may be pursued by the Liquidating Trustee, including the Lexington Claim referenced above.

## V.
## EVENTS LEADING TO BANKRUPTCY AND ENGAGEMENT OF PROFESSIONALS

**A.**   **Debtor's Inability to Continue Debt Service Payments and Fannie Mae's Foreclosure Action.**

The Debtor asserts it sought protection under Chapter 11 in order to, among other things, stay the foreclosure sale of the Real Property after Fannie Mae gave notice of its default under the Loan Documents and posted the Real Property for a foreclosure sale.

**B.**   **Professionals Employed by the Debtor.**

The Debtor has employed Margaret M. McClure as its Chapter 11 bankruptcy counsel. Ms. McClure has indicated that she expects her fees and expenses to total $85,000, $20,000 of which has been paid as a retainer prior to the Petition Date.  The Debtor has also employed Creative Property Management Co. as its property manager pursuant to an agreement whereby they are paid four percent of the monthly gross rents from the Real Property.  Additionally, the Debtor has employed Scott Burgess, Certified Public Accountant to prepare its 2010 tax returns and partner K1's at a rate of $175 per hour.  Further, the Debtor has employed James L. Cornell of Cornell & Pardue, as lead counsel, and Matthew R. Pearson and Marc Gravely of Gravely & Pearson, L.L.P., as co-counsel in its insurance litigation suit.  Messrs. Cornell, Pearson, and Gravely (collectively, the "Special Counsel") charge a contingency fee of forty percent if a settlement or recovery is achieved prior to the notice of an appeal on the merits, or forty-five percent if a settlement or recovery is achieved after a notice of appeal is filed, in addition to other costs and expenses.  To date, the Special Counsel have been paid $439,148.48 in fees and $100,201.01 in expenses from the partial settlement of the insurance litigation received by the Debtor.  Lastly, the Debtor has employed Jeff A. Shillings of Haginas Chapman & Shillings to appraise the Real Property for a flat fee of $5,000.  All of the Debtor's professionals' fees have been approved by the Court. *See* Docket Nos. 19, 55, 60, 84, and 94.

## VI.
## DESCRIPTION OF THE PLAN

**A.**   **Introduction**

A description of the principal provisions of the Plan and the treatment of Allowed Claims and Interests is set out below.  The description in this Disclosure Statement is qualified in its entirety by the Plan.  Unless the context otherwise requires, the terms defined in this Disclosure Statement shall have the same meanings as ascribed to such terms in the Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term that is not defined in the Plan or this Disclosure Statement, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

## TREATMENT OF NON-CLASSIFIED CLAIMS

The Plan does not classify certain Claims against the Debtor having priority as specified in Section 507 of the Bankruptcy Code, which Claims shall be treated as follows:

**A.    Administrative Claims:**

1. **General**.  Each holder of an Administrative Claim, except as otherwise set forth in this Article 2, shall receive on the Effective Date from the Fannie Mae Contribution either: (i) with respect to an Administrative Claim which is an Allowed Claim on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within thirty (30) days after the Effective Date; (ii) with respect to an Administrative Claim which becomes an Allowed Claim after the Effective Date, the amount of such holder's Allowed Claim, in one (1) cash payment from the Debtor within thirty (30) days after such claim becomes an Allowed Administrative Claim; or (iii) such other treatment agreed upon by Fannie Mae and such holder of an Administrative Claim.

2. **Fee Claims**.  Each professional person whose retention with respect to the Chapter 11 Case that has been approved by the Bankruptcy Court and who holds, or asserts, an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within twenty (20) days after the Effective Date and serve notice thereof on all parties entitled to such notice under applicable federal and local bankruptcy rules.  Any such application must apply all retainers received by the professional person.  The failure to timely file any such application as required under this Section 2.01(b) of this Plan shall result in the Fee Claim being forever barred and discharged.  A Fee Claim, with respect to which a Fee Application has been properly Filed pursuant to this Section 2.01(b) of this Plan, shall become an Administrative Claim only to the extent allowed by Final Order.  Fee Claims shall be paid by the Liquidating Trustee either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within forty-five (45) days after the Effective Date, by the Liquidating Trustee; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one (1) cash payment by the Liquidating Trustee within forty-five (45) days after such claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Liquidating Trustee and such holder.

3. **Administrative Claims Bar Date**.  Any other Person or Entity who claims to hold an Administrative Claim (other than a Fee Claim) shall be required to file with the Court an application within thirty (30) days after the Effective Date and to serve notice thereof on all parties entitled to such notice.  The failure to file timely the application as required under this section of the Plan shall result in the Claim being forever barred and discharged.  An Administrative Claim with respect to which an application has been properly Filed pursuant to this section of the Plan and to which no timely objection has been filed or an objection has been filed but overruled by the

Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

**B.**     **U.S. Trustee Fees**.  All fees payable under 28 U.S.C. § 1930 shall be paid in Cash in full by the Liquidating Trustee within thirty (30) days after the Effective Date or as they come due.

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

For purposes of repayment of the Allowed Claims and Interests under the Plan, the Claims and Interests are divided into the following classes:

**Class 1: Priority Claims.**  This Class consists of all Allowed Priority Claims.

**Class 2: Secured Tax Claims.**     This Class consists of all Secured Tax Claims.

**Class 3:  Secured Claim of Fannie Mae.**  This Class consists of the Allowed Secured Claim of Fannie Mae.

**Class 4: General Unsecured Claims.**  This Class consists of all Allowed General Unsecured Claims.

**Class 5: Interest Holder Claims.**  This Class consists of all Interests.

## PROVISIONS FOR SATISFACTION
## OF CLAIMS AND INTERESTS

The Claims and Interests as classified in Article III of the Plan shall be satisfied in the manner set forth in Article IV of the Plan.  The treatment of, and the consideration to be received by, entities holding Allowed Claims against the Debtor pursuant to the Plan shall be in full satisfaction of their respective Allowed Claims against the Debtor.

**Class 1:  Priority Claims.**  Except to the extent that such holder of an Allowed Priority Claim has agreed or agrees to a different treatment of such Claim, each holder of an Allowed Priority Claim shall receive, on account of and in full satisfaction of such Claim, cash from the Fannie Mae Contribution in an amount equal to 100% of the Allowed amount of such Claim on the later of: (i) within thirty (30) days after the Effective Date; or (ii) within thirty (30) days after an order Allowing the Priority Claim.

Class 1 is not Impaired.

**Class 2: Secured Tax Claims.**     Except to the extent that a holder of an Allowed Secured Tax Claim has agreed or agrees to a different treatment of such Claim, Each holder of an Allowed Secured Tax Claim shall retain all Liens securing its Claim until

such Claim is fully paid or until such holder otherwise agrees. Such Liens shall have priority to any other liens or security interests of other Creditors as provided by applicable laws or as determined by the Bankruptcy Court in the event of any dispute as to such priority. The Plan shall not alter any legal, equitable, or contractual right of any holder of any Allowed Secured Tax Claim.

Class 2 is not Impaired.

**Class 3: Allowed Secured Claim of Fannie Mae.** Fannie Mae's Secured Claim against the Debtor shall be deemed secured and Allowed. On the Effective Date, the automatic stay shall be terminated as to Fannie Mae and Fannie Mae shall be permitted to enforce any and all of its rights under the Fannie Mae Loan Documents and applicable law, including, without limitation, foreclosure against any of its Collateral. To the extent that Fannie Mae's Secured Claim in Class 3 is not satisfied in full from the proceeds from its Collateral, Fannie Mae shall be entitled to and Allowed a Class 4 General Unsecured Claim for any deficiency.

Class 3 is Impaired.

**Class 4: General Unsecured Claims.** In full and final satisfaction and settlement of their Allowed Unsecured Claim, each holder of a Class 4 Allowed Unsecured Claim shall receive its pro rata portion of the net recovery, if any, after payment of attorneys' fees, costs, and expenses, from the Debtor's litigation claims in the matter styled E2 Real Estate Partners III, LLC vs. Lexington Insurance Company, et al., Cause No. 2009-36048, currently pending before the 55th Judicial District Court of Harris County, Texas (the "Lexington Claim"). Fannie Mae will subordinate its Allowed Unsecured Claim to that of other Allowed Unsecured Claims and shall not receive a distribution on account of its Allowed Unsecured Claim until all other Allowed Unsecured Claims have been satisfied in full.

Class 4 is Impaired.

**Class 5: Interests in the Debtor.** All Class 5 Interests in the Debtor are cancelled on the Effective Date and shall receive nothing on account of their interests.

Class 5 is Impaired.

## ACCEPTANCE OR REJECTION OF PLAN

A.    **Impairment Controversies**. If a controversy arises as to whether any Class is Impaired under the Plan, such Class shall be treated as specified in the Plan unless the Bankruptcy Court

shall determine such controversy differently upon motion of the party challenging the characterization of any particular Class under the Plan.

**B.**     **Classes and Claims Entitled to Vote.**  (i) Unclassified Claims and Classes 1 and 2 are not impaired and are therefore deemed to have accepted the Plan without the necessity of voting; (ii) Classes 3 and 4 are impaired under the Plan and are entitled to vote on the Plan to the extent that a Claim in such Class is not the subject of a pending objection as to allowance, or the holder of any such objected-to Claim has obtained an order from the Bankruptcy Court permitting such holder to vote on the Plan; and (iii) Class 5 is deemed to have rejected the Plan without the necessity of voting.

## MEANS FOR IMPLEMENTATION OF PLAN

### Liquidating Trust

1.     **Creation of the Liquidating Trust**.  On the Effective Date, the Liquidating Trust shall be formed pursuant to this Plan and the Liquidating Trust Agreement.  All of the Liquidating Trust Assets shall be transferred to and vest in the Liquidating Trust, and the Liquidating Trust shall be responsible for payment of all Allowed Claims against the Debtor pursuant to the terms of the Plan and the Liquidating Trust Agreement.  The Liquidating Trust shall be created for the benefit of the Debtors in order to liquidate the Debtor's assets and satisfy claims against the Debtor to the fullest extent possible.  As such, Interest holders will be the beneficiaries of the Liquidating Trust.  If necessary, Fannie Mae shall fund an amount to be determined by Fannie Mae and Liquidating Trustee (not to exceed $20,000) to the Liquidating Trust in order to pay anticipated administrative costs of the Liquidating Trustee.

2.     **Liquidating Trust Distributions**.  Pursuant to this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall liquidate the Liquidating Trust Assets and, in addition to paying the obligations of the Liquidating Trust, distribute the resulting proceeds as required by the Plan and the Liquidating Trust Agreement.

3.     **The Liquidating Trustee**.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).  Subject to the Bankruptcy Court's approval and appointment at the Confirmation Hearing, a Person designated by Fannie Mae shall initially serve as the Liquidating Trustee.  Matters relating to the appointment, removal, and resignation of the Liquidating Trustee, and the appointment of any successor Liquidating Trustee, shall be set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall be required to

perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement.

4.   **The Plan is a Motion to Transfer Liquidating Trust Assets**.   Under Bankruptcy Code §§ 1123 and 1129, this Plan shall serve to transfer and vest any and all Liquidating Trust Assets as of the Confirmation Date to the Liquidating Trust free and clear of Liens, Claims, encumbrances, and interests except as otherwise provided in this Plan.  Any objections to such transfer must be made as an objection to Confirmation of the Plan to be heard at the Confirmation Hearing.  Any Person having a Lien, Claim, encumbrance, or interest against any Liquidating Trust Assets who does not object to this Plan shall be conclusively deemed to have consented to the transfer of such Property to the Liquidating Trust free and clear of such Lien, Claim, encumbrance, or interest by failing to object to Confirmation of this Plan.

5.   **Corporate Authority**.  All actions and transactions contemplated under the Plan, including, but not limited to, any certificates, agreements, or other documents to be executed in connection with the conveyance of all of the Liquidating Trust Assets to the Liquidating Trust, shall be authorized upon Confirmation of the Plan without the need for further approvals, notices, or meetings of the Debtor's managers, principals, or Interest holders.  The Confirmation Order shall include provisions dispensing with the need for further approvals, notices, or meetings of any of the Debtor's managers, principals, or Interest holders and authorizing and directing any officer of the Debtor to execute any document, certificate, or agreement necessary to effectuate the Plan on behalf of the Debtor, which documents, certificates, and agreements shall be binding on the Debtor, the Creditors, and all Interest holders.  The Liquidating Trustee is vested with authority to take any action contemplated by this Plan or the Liquidating Trust on behalf of the Debtor that would otherwise require the approval of managers or officers of the Debtor.  From and after the Confirmation Date, the existing managers and/or officers the Debtor shall have no further duties or responsibilities with respect to the Debtor or the Liquidating Trust.

6.   **Issuance of Liquidating Trust Interests**.  It is an integral and essential element of the Plan that the issuance of any interests in the Liquidating Trust pursuant to the Plan be exempt from registration under the Securities Act of 1933 and similar state laws pursuant to Bankruptcy Code § 1145.  The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Chapter 11 Case, the Liquidating Trustee, the Securities and Exchange Commission, and all other federal and state regulatory enforcement agencies, to the effect that such offer and issuance fall within the exemption(s) from registration under the Securities Act pursuant to Bankruptcy Code § 1145.  In lieu of certificates evidencing the Liquidating Trust Interests, the Liquidating Trustee shall maintain a register of the names, addresses, and interest percentages of Persons who are entitled to receive beneficial interests in the Liquidating Trust.  Fannie Mae believes that the exemption in Bankruptcy Code § 1145 applies to the Liquidating Trust Interests.

If applicable, the Liquidating Trustee shall provide a legend on any certificate issued with respect to the Liquidating Trust Interests that states that such interests were not registered under the Securities Act pursuant to the exemption in Bankruptcy Code § 1145. The Liquidating Trust Interests may not be sold, otherwise disposed of, or offered for sale unless registration statements under such acts with respect to such Liquidating Trust Interests are then in effect or exemptions from the registration statements of such acts are then applicable to such offer, sale, or other disposition.

7.  **Retention of Professionals**.  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust upon submission of statements to the Liquidating Trustee.  The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Liquidating Trust and shall not be subject to the approval of the Bankruptcy Court.  Professionals of Fannie Mae or Arbor shall be eligible for retention by the Liquidating Trustee.

8.  **Compensation of the Liquidating Trustee**.  The Liquidating Trustee's compensation shall be as set forth in the Liquidating Trust Agreement. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made in accordance with the Liquidating Trust Agreement.

9.  **Liquidating Trust Expenses**.  Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses, and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental, or related thereto, in effecting distributions from the Liquidating Trust hereunder (including the reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee.  Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

10. **Conflicts between the Liquidating Trust Agreement and the Plan**.  In the event of any inconsistencies between the Liquidating Trust Agreement and the Plan, the terms and provisions of the Plan shall control.

11. **Liability; Indemnification**.  The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence, or fraud.  The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.

Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants, or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from, against, and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence, or fraud. Any claim asserted under this provision must be brought in the Bankruptcy Court.

A. **Funding of Plan**. On the Effective Date, Fannie Mae will make the Fannie Mae Contribution to fund payment of Claims as provided in and pursuant to the Plan and the Liquidating Trust Agreement.

B. **Consummation**. For all purposes, substantial Consummation shall occur the instant upon which the first distributions of cash or property have been made to any class of Creditors under this Plan, at which time this Plan shall be deemed substantially consummated and on which date this Plan shall be fully effective.

C. **Post-Confirmation Management**. On the Confirmation Date, the Debtor's existing equity security holders and managers will cease to serve as managers of the Debtor, and the Liquidating Trustee will control the operations of the Debtor. Any agreement to use Creative Property Management, Co. as management company for the Logan's Pointe Apartments shall be rejected as of the Confirmation Date and the Liquidating Trustee shall retain a management company to manage the Logan's Pointe Apartments in consultation with and that is approved by Fannie Mae.

D. **Exculpation**. The Liquidating Trustee and Fannie Mae shall be entitled to rely upon advice and opinions of counsel concerning legal matters, the authenticity of affidavits, letters, telegrams, cablegrams and other methods of communication in general use and usually accepted by businessmen as genuine and what they purport to be, and upon this Plan and any schedule, certificate, statement, report, notice or other writing which they believe to be genuine or to have been presented by a proper entity. Except for its or their own gross negligence or intentional misconduct, neither the Liquidating Trustee, Fannie Mae, their managers, nor any of their respective employees or agents shall: (a) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of any documents executed or delivered in connection with the implementation or consummation of this Plan; (b) be under any duty to inquire into, or pass upon any matter, or to make any inquiry concerning the validity of any representation or warranty of third parties or the performance by third parties of their obligations; or, (c) in any event, be liable as such for any action taken or omitted by it or them.

E.    **Books and Records**.  The Debtor shall promptly deliver all books and records of the Debtor to the Liquidating Trustee, but no later than 3 days after the Confirmation Date.

## PROVISIONS REGARDING DISTRIBUTIONS AND OBJECTIONS TO CLAIMS

A.    **Limitation on Distributions**. Notwithstanding any other provision of this Plan, no Claimant shall receive more than the Allowed amount of its Claims in connection with this Plan or the Liquidating Trust.  To the extent that all Claims are paid their fully Allowed amounts, the Liquidating Trustee shall turn over all remaining Liquidating Trust Assets to the Interest holders after paying or reserving for all remaining Liquidating Trust expenses.

B.    **Date of Distributions**. Any distributions and deliveries to be made to holders of Allowed Claims under this Plan shall be made on the dates specified herein.

C.    **Means of Payment**. Payments to be made pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

D.    **Recipient of Distributions**. All distributions to holders of Allowed Claims to be made under the Plan shall be made to the holder of such Claim as set forth on the register of Claims on file in the Bankruptcy Court. Changes as to the holder of a Claim on or after the Effective Date shall only be valid and recognized for distribution, voting, and all other purposes if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001, if applicable, and served upon the Liquidating Trustee.

E.    **Time Bar to Payments**. Checks issued by the Liquidating Trustee in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Any Claim in respect to such a voided check shall be discharged and forever barred, and the distribution made on account of such Claim shall be discharged and forever barred, and the distribution made on account of such Claim shall be redistributed pro-rata to the holders of Allowed Claims.

F.    **No Distributions Pending Allowance or Estimation of Claims.**  No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim, as determined by Final Order.  No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

G.    **Reserves.**  The Liquidating Trustee shall establish reserves for Contested Claims that may become Allowed Claims after the Effective Date.

H.    **Prosecution of Objections**. On and after the Effective Date, the filing, litigation, settlement or withdrawal of all objections to Claims shall be the right of Fannie Mae, or the Liquidating Trustee in consultation with Fannie Mae, except that objections to a Fee Claim may be made by parties in interest in accordance with the Bankruptcy Rules.

I. **Amendments to Claims; Late Filed Claims**. Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim or Interest may not be filed with the Bankruptcy Court or amended after the Confirmation Date without prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Liquidating Trustee. The holder of a Claim that is disallowed pursuant to this section shall not receive any distribution on account of such Claim or Interest.

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A. **Assumption of Certain Executory Contracts.** All Executory Contracts which have been previously assumed or are on a list of assumed contracts filed by Fannie Mae with the Court within fourteen (14) days after the Effective Date are assumed.

B. **General Rejection of Executory Contracts.** All Executory Contracts which have not been previously assumed or are not on a list of assumed contracts filed by Fannie Mae within fourteen (14) days after the Effective Date are hereby rejected.

C. **Claims for Damages.** Each person who is a party to an Executory Contract rejected pursuant to this Article shall be entitled to file, not later than forty-five (45) days after the Effective Date, which is the deemed date of such rejection, a proof of claim for damages alleged to arise from the rejection of the Executory Contract to which such person is a party. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 3 Claims.

## LITIGATION CLAIMS

A. **Reservation and Retention of Claims and Causes of Action.** Any and all claims, causes of action, cross claims or counterclaims held or assertable by the Debtor or the Debtor's Estate, including but not limited to: (i) the Lexington Claim; (ii) the Causes of Action; (iii) any claim or cause of action under a policy of liability insurance or otherwise; (iv) the Avoidance Actions; and (v) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor or the Debtor's Estate has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust laws violations, tying

arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract in tort, or otherwise, known or unknown, suspected or unsuspected, (the "Litigation Claims") are hereby preserved and retained for enforcement for the benefit of the Liquidating Trust.

B.      **Exclusive Standing.**  The Liquidating Trustee shall have the exclusive right and standing to pursue, release or compromise the Litigation Claims on and after the Confirmation Date.

C.      **Failure to Disclose Litigation Claims.**  It is the intent of the Plan Proponent that the above reservation of Litigation Claims shall be as broad as permitted by applicable law and shall include all Litigation Claims, whether or not disclosed in the Debtor's schedules, and shall include any Litigation Claims referenced in any disclosure statement filed in this case.  Without limitation, the Plan Proponent specifically retains Litigation Claims against Interest holders and other affiliates or insiders of the Debtor even if Interest holders or their affiliates or insiders have failed to disclose, or even contest the existence of, such claims.

## EFFECT OF CONFIRMATION, DISCHARGE, RELEASES, AND INJUNCTION

A.      **Injunction or Stay**.  Except as otherwise expressly provided in the Plan, all Entities who have held, hold or may hold Claims against or Interests in the Debtor, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, or Fannie Mae with respect to such Claim or Interest: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enjoining or seeking to enjoin the exercise of any right or remedy provided by or contemplated by the Plan; (iii) enforcing, attaching, collecting or recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iv) creating, perfecting, or enforcing, in any manner, directly or indirectly, any encumbrance of any kind; or, (v) asserting any right of setoff, subrogation or recoupment of any kind.

B.      **Exculpation of Fannie Mae, the Liquidating Trustee and Professionals**.  Notwithstanding anything herein to the contrary, as of the Effective Date, neither Fannie Mae, the Liquidating Trustee nor their Professionals shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Petition Date in connection with, or arising out of, the Chapter 11 Case, the formulation, dissemination, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Case, the Plan, the Disclosure Statement, or any contract, instrument,

document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* act.

**C.**     **Mandatory Jurisdiction for Certain Claims Against Fannie Mae and its Professionals**. Exclusive jurisdiction for any claim, cause of action or other assertion of liability against Fannie Mae or its directors, officers, employees, partners, members, agents, representatives, accountants, expert witnesses and/or attorneys for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or arising out of the Chapter 11 Case, the formulations, dissemination, confirmation, consummation or administration of the Plan shall lie with the Bankruptcy Court.

**D.**     **Release of Fannie Mae**.   Upon the Effective Date of the Plan, the Debtor releases, acquits, and forever discharges Fannie Mae, together with its employees, accountants, attorneys, agents, successors, and assigns, of and from any and all rights, claims, counterclaims, actions, causes of action, demands, obligations, costs, expenses, losses, damages, or liabilities which a party has or may have, or to which the party may be entitled, whether known or unknown, whether now or hereafter existing and whether arising out of Title 11 of the United States Code, any other federal or state statute, rule, regulation, common law, tort, contract, negligence, gross negligence, intentional conduct, acts or failure to act, strict liability, real property rights, personal property rights, or any other theory or basis in law or in equity.

**E.**     **Fannie Mae Retains Liens**.   For the sake of clarity and notwithstanding any other provisions of this Plan, Fannie Mae shall retain all liens and security interests arising under the Fannie Mae Loan Documents or otherwise, notwithstanding the Effective Date or the transfer of such collateral and/or property to the Liquidating Trust.

## MISCELLANEOUS PROVISIONS

**A.**     **Headings.**   All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

**B.**     **Due Authorization.**   Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor's Estate, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

**C.**     **Further Assurances and Authorizations.**   The Plan Proponent shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan.

**D.**     **Applicable Law.**   Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by

and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

E.   **Privileged Communications; Work Product.**   For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Liquidating Trustee shall succeed to the interest of the Debtor and the Estate with regard to privileged communications and work product.   Within five (5) days after the Confirmation Hearing, if the Bankruptcy Court confirms this Plan, the Debtor and Debtor's counsel shall promptly transfer all attorney client communication and attorney-client work product to the Liquidating Trustee.

F.   **No Interest.**   Except as expressly stated in this Plan, or allowed by the Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Filing Date.

G.   **Post-Confirmation Actions.**   After Confirmation, the Plan Proponents may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

H.   **Payment Dates.**   Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business day, except as may be provided in negotiable instruments requiring such payments.

I.   **Conditions Precedent to Effectiveness.**   The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full: (i) the Confirmation Order, in form and substance reasonably satisfactory to Fannie Mae, shall have been entered by the Bankruptcy Court and shall not be subject to any stay or injunction; (ii) all actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and, (iii) the Liquidating Trustee shall have assumed his position.

J.   **Effect of Failure of Conditions to Effective Date.**   In the event the conditions precedent specified in Section 11.9 hereof have not been satisfied on or prior to one-hundred eighty (180) days after the Confirmation Date, then: (i) the Confirmation Order shall be vacated; (ii) no distributions under the Plan shall be made; (iii) the Debtor and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceedings involving the Debtor; and, (v) nothing contained herein shall prejudice in any manner the rights of the Debtor.

**K.**   **Payment of Statutory Fees**. On the Effective Date, and thereafter as may be required, the Debtor or Liquidating Trustee shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**L.**   **Amendments or Modifications of the Plan**. Alterations, amendments, or modifications of or to the Plan may be proposed in writing by Fannie Mae at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and Fannie Mae has complied with section 1125 of the Bankruptcy Code. After the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Equity Interests under the Plan, Fannie Mae or the Liquidating Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  A holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

**M.**   **Revocation or Withdrawal of the Plan**. Fannie Mae reserves the right to revoke or withdraw the Plan prior to the Effective Date. If Fannie Mae takes such action, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims against the Debtor, any claims or rights of the Debtor against any other person or to prejudice in any manner the rights of Fannie Mae or any other person in any further proceedings involving the Debtor.

**N.**   **Severability**. If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Fannie Mae, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision as altered or interpreted shall then be applicable. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**O.**   **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule or document in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

**P.**   **Binding Effect**. The Plan shall be binding upon the Debtor, the holders of Claims and Equity Interests and other parties in interest, and their respective successors and assigns.

**Q.**   **Time**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain exclusive jurisdiction over this Chapter 11 Case after Confirmation, notwithstanding Consummation or substantial consummation, for the following purposes:

(a)   to consider and effect any modification of this Plan under Section 1127 of the Bankruptcy Code;

(b)   to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

(c)   to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

(d)   to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

(e)   to hear and determine all Causes of Action;

(f)   to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

(g)   to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

(h)   to approve the reasonableness of any payments made or to be made, within the meaning of Section 1129(a)(4) of the Bankruptcy Code;

(i)   to exercise the jurisdiction granted pursuant to Section 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

(j)   to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

(k)   to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Liquidating Trustee or Fannie Mae.

Nothing contained in this Article shall be construed so as to limit the rights of the Liquidating Trustee or Fannie Mae to commence or prosecute any claim in any court of competent jurisdiction.

# VII.
## CONDITIONS TO PLAN'S EFFECTIVENESS

Except as expressly waived by Fannie Mae, the following conditions must occur and be satisfied on or before the Effective Date:

(a)     A Confirmation Order approving the Plan in form and substance acceptable to Fannie Mae must have been signed by the Court and duly entered on the docket for the Debtor's Chapter 11 Case by the Clerk of the Bankruptcy Court;

(b)     The Confirmation Order must have become a Final Order and must not have been stayed, modified, reversed or amended; and

(c)     Fannie Mae must have available resources to fund the Liquidating Trustee's obligations under the Plan.

Fannie Mae may waive any condition set forth in the Plan at any time, without notice, without leave of or order of the Court, and without any formal action other than proceeding to Consummate the Plan.

So long as no stay is in effect, the Effective Date of the Plan will occur notwithstanding the pendency of an appeal of the Confirmation Order or any Order related thereto.  In that event, Fannie Mae may seek dismissal of any such appeal as moot following the Effective Date of the Plan.

# VIII.
## FEASIBILITY OF THE PLAN

### A.     Feasibility

Because the Plan anticipates the liquidation and distribution of the Debtor's remaining assets, proof of feasibility pursuant to 11 U.S.C. § 1129(a)(11) is not required.  However, Fannie Mae believes the Plan is feasible and can and will be completed if confirmed.

### B.     Alternatives to Confirmation of the Plan

There are three possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (a) the Bankruptcy Court could dismiss the Chapter 11 Case; (b) the Chapter 11 Case could be converted to a liquidation case under Chapter 7 of the Bankruptcy

Code; or, (c) the Bankruptcy Court could consider an alternative chapter 11 plan proposed by some other party such as the Debtor.

### 1.      Dismissal

If the Chapter 11 Case was dismissed, the Debtor and creditors would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code.  Fannie Mae would then have the right to and would exercise its rights as a secured creditor.  In such event, Fannie Mae is unlikely to sell the Debtor's Real Property for more than its claim since the Real Property's appraised value is significantly less than such claim.  Furthermore, any value derived from the Lexington Claim is likely to go to the Debtor's equity holders exclusively.  In this scenario, unsecured creditors would likely receive nothing.

### 2.      Chapter 7 Liquidation

If the Plan is not confirmed and the Chapter 11 Case is not dismissed, it is possible that the Chapter 11 Case will be converted to a case under Chapter 7 of the Bankruptcy Code, in which event a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.  Whether a bankruptcy case is one under Chapter 7 or Chapter 11, secured creditors, Administrative Claims and Priority Claims are entitled to be paid in cash and in full before unsecured creditors receive any payments or distributions.

If the Chapter 11 Case was converted to Chapter 7, the present Priority Claims may have a priority lower than priority claims generated by the Chapter 7 case, such as the Chapter 7 trustee's fees or the fees of attorneys, accountants, and other professionals engaged by the trustee.

Fannie Mae believes that liquidation under Chapter 7 would result in either no or minimal distributions to unsecured creditors.  The only assets remaining following distributions to Fannie Mae and any other secured creditors on account of their Collateral would be the Lexington Claim and other litigation claims.  Administrative Claims would diminish and possibly exhaust any recovery from these assets.  Furthermore, Fannie Mae would not agree to subordinate its unsecured deficiency claim in a Chapter 7 case, thus significantly diluting any recovery to other unsecured creditors.  Moreover, the conversion to Chapter 7 would give rise to additional administrative expenses involved in the appointment of a trustee and the employment of attorneys and other professionals to assist such trustee.

### 3.      Confirmation of an Alternative Plan

The Debtor filed a Chapter 11 plan; but no date has yet been set for a hearing on the same and the Debtor has since withdrawn the disclosure statement in support of its plan.  Fannie Mae is unaware of any other party in interest in the Chapter 11 Case that intends to file a chapter 11 plan.

# IX.
# RISK FACTORS

The primary risk factor associated with the Plan is that Fannie Mae will not make its required Contribution under the Plan.  Fannie Mae believes this risk is insignificant.  Fannie Mae has every intention of making its required Contribution under the Plan and, in fact, has more than enough funds available to make the Contribution through the Cash Collateral currently held in the Debtor's debtor-in-possession bank account.

# X.
# CERTAIN FEDERAL INCOME TAX CONSEQUENCES

**A.     Introduction**

Implementation of the Plan may have federal, state and local tax consequences to the Debtor and its Estate, as well as to Creditors and Interest holders of the Debtor.  No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan, and the following disclosure does not constitute and is not intended to constitute either a tax opinion or tax advice to any Person.

This disclosure is provided for informational purposes only.  Moreover, this disclosure summarizes only certain of the federal income tax consequences associated with the Plan's confirmation and implementation and does not attempt to comment on all such aspects.  Similarly, this disclosure does not attempt to consider any facts or limitations applicable to any particular Creditor or Interest holder that may modify or alter the consequences described below.  This disclosure does not address state, local or foreign tax consequences or the consequences of any federal tax other than the federal income tax.

This disclosure is based upon the provisions of the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, existing judicial decisions, and administrative rulings.  In light of the expansiveness of such authorities, no assurance can be given that legislative, judicial or administrative changes will not be forthcoming that would affect the accuracy of the discussion below.  Any such changes could be material and could be retroactive with respect to the transactions entered into or completed prior to the enactment or promulgation thereof.  Finally, the tax consequences of certain aspects of the Plan are uncertain due to a lack of applicable legal authority and may be subject to judicial or administrative interpretations that differ from the discussion below.

**CREDITORS AND INTEREST HOLDERS, THEREFORE, ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

**B.     Nature of the Debtor for Federal Income Tax Purposes**

The Debtor was formed as limited liability company organized and existing under the laws of the State of Texas. For federal income tax purposes, the Debtor is considered a cash basis partnership, filing a Form 1065 – U.S. Return of Partnership Income and Schedule K-1s, "passing through" any income, deductions, gains, losses, etc. to its members for inclusion in their income tax returns. As a result, any income/loss resulting from the sale or transfer of assets in liquidation or from other recoveries, or income from the reduction of indebtedness, will be passed through to the Debtor's members in their respective profit/loss sharing percentages and retaining the same characterization of the source of income/loss.

## C.     Federal Income Tax Consequences to Creditors

The tax consequences of the implementation of the Plan to a creditor will depend in part on whether the creditor's current "debt" or "claim" constitutes a "security" for federal income tax purposes, the type of consideration received by the creditor in exchange for its Allowed Claim, whether the creditor reports income on the accrual or cash basis, whether the creditor receives consideration in more than one tax year of the creditor, whether the creditor is a resident of the United States, and whether all the consideration received by the creditor is deemed to be received by that creditor in an integrated transaction.

A creditor who receives cash or property in full satisfaction of its Claim will be required to recognize gain or loss on the payment or exchange. The creditor will recognize gain or loss equal to the difference between the amount realized in respect of such Claim and the creditor's tax basis in the Claim. The exact tax treatment depends on each Creditor's method of accounting, the basis of the amount of distributions received, and whether and to what extent such Creditor has taken a bad debt reduction in prior taxable years with respect to a particular debt owed to it by the Debtor. **EACH CREDITOR IS URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE PARTICULAR TAX CONSEQUENCES OF ITS CLAIM UNDER THE PLAN.**

## D.     Tax Withholding

Pursuant to the Plan, Fannie Mae and the Liquidating Trustee will withhold from payments made to Creditors pursuant to the Plan any amounts required by law to be withheld. In order to assist that withholding process, Creditors may be required to provide general tax information to the Trustee prior to receiving their distributions under the Plan.

## E.     Disclaimers

**PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. THE PLAN PROPONENT MAKE THE ABOVE-NOTED DISCLOSURE OF POSSIBLE TAX CONSEQUENCES FOR THE SOLE PURPOSE OF ALERTING READERS TO TAX ISSUES THAT THEY MAY WISH TO CONSIDER. THE PLAN PROPONENT**

**CANNOT, AND DOES NOT, REPRESENT THAT THE TAX CONSEQUENCES MENTIONED ABOVE ARE COMPLETELY ACCURATE BECAUSE, AMONG OTHER THINGS, THE TAX LAW EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE ACCURATELY WHAT THE TAX IMPLICATIONS OF ANY ACTION MIGHT BE.**

**IRS CIRCULAR 230 NOTICE:  TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, THE PLAN PROPONENT INFORMS ALL RECIPIENTS OF THIS DISCLOSURE STATEMENT THAT ANY U.S. TAX INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING THE EXHIBITS HERETO) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF: (A) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE; OR, (B) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.**

## XI.
## CONCLUSION

This Disclosure Statement has attempted to provide information regarding the Debtor's Estate and the potential benefits that might accrue to holders of Claims against and Interests in the Debtor under the Plan as proposed.  Fannie Mae believes that the Plan is feasible and will provide each holder of a Claim against the Debtor with an opportunity to receive greater benefits than those that would be received by any alternative plan.  Fannie Mae, therefore, hereby urges you to vote in favor of the Plan.

**Whether or not you expect to attend the Confirmation Hearing, which is scheduled to commence on _____ _____, 2011, at _____:_____ ___.m., Central Time, you must sign, date, and mail your ballot as soon as possible for the purpose of having your vote count at such hearing.  All ballots must be returned to the attorney for Fannie Mae:**

Aida Wondwessen
Winstead PC
1201 Elm Street, Suite 5400
Dallas, Texas 75270

**All ballots must be returned on or before 5:00 p.m., Central Time, on _____ _____, 2011.  Any ballot which is illegible or which fails to designate an acceptance or rejection of the Plan will not be counted.**

**DATED: April 4, 2011**

Respectfully Submitted,

Fannie Mae

By: _____ */s/ James Noakes* _____
       Its Authorized Representative

AND

By: _____ */s/ Phillip L. Lamberson* _____
       Phillip L. Lamberson
       State Bar No. 00794134
       Sean B. Davis[5]
       State Bar No. 24069583
       S.D. Tex. No. 1048341
       **WINSTEAD PC**
       5400 Renaissance Tower
       1201 Elm Street
       Dallas, Texas 75270
       Telephone: (214) 745-5400
       Facsimile:  (214) 745-5390

       **ATTORNEYS FOR FANNIE MAE**

---

[5] Resident at Winstead's Houston office.